## THE VAN.

## THE BRANDON.

(District Court, S. D. Florida. May 21, 1919.)

1. COLLISION ⊚⇒90—BOAT AT DOCK—NEGLIGENT NAVIGATION OF PASSING VESSEL.

    A steamship, which, while under way up a narrow stream, cast off the lines of a motor barge alongside, which was not then under power, the result being that she struck the stern of the barge and caused her to collide with a vessel at a dock, *held* solely in fault for the collision.

2. COLLISION ⊚⇒135—MEASURE OF DAMAGES.

    When the cost of repairing a vessel injured in collision would be disproportionate to her value, the court may take the amount of depreciation in value caused by the collision as the measure of damages.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit for collision by Nina F. Stokes and John C. Stokes, her husband, against the steamship Van and the gasoline barge Brandon. Decree for libelants against the Van.

A. J. Rose, of Miami, Fla., for libelant.

George C. Bedell, of Jacksonville, Fla., for respondent.

CALL, District Judge. In this cause the testimony is very conflicting as to the cause of the collision, the condition of the motorboat before and after the collision, and the damage resulting to the Joliet from the collision. It is impossible to reconcile the conflicts.

After carefully considering the testimony, I am of opinion that the following statement is established by the testimony:

[1] The Joliet was lying at the Seminole Dock, on the Miami river, her stern made fast with a one-inch manilla line, and her bow with a smaller line; that the Van was aground at the mouth of the river, some 200 yards from the Seminole Dock; that the Brandon, a motor barge 65 feet long and 20 feet beam, was lying on the starboard side of the Van, loaded with about 15 tons of freight, when the Van came off and started to her dock, some half a mile up the river, said dock being on the north side; that while the Van was under headway the line to the bow of the Brandon was cast off, and the Van proceeding on her way, the Brandon not being under power, the stern of the Brandon came in contact with the Van; that the force of the contact caused the bow of the Brandon to collide with the Joliet, striking some feet abaft the stern with sufficient force to part the one-inch line with which the stern of the Joliet was made fast to the dock.

It appears to me from these facts that the collision occurred through the Van casting off the line from the bow of the Brandon while under way, the Brandon at the time not being under power, so as to control her movements, in the narrow channel of the Miami river, and the resulting striking of the stern of the Brandon.

These acts, being the proximate and contributing causes of the collision, when the current of the river is taken into consideration, were such faults of navigation as entitle the libelant to recover.

[2] The matter of the amount of such recovery is also of much difficulty under the testimony. The libelant claims that the Joliet is virtually of no value; that it is impossible to repair her without an expenditure of a sum grossly disproportionate to her value prior to the collision. The claimant, on the other hand, claims that no appreciable damage was done; that such damage as resulted from the collision was repaired by it; that such list as was testified to exist after the collision existed prior thereto. Here I find the same conflict; most of the witnesses being interested or their positions being such as entitle their observations to little weight. However, there are one or two witnesses who apparently are not interested, and whose position and examination entitle their testimony to weight, and the preponderance of such testimony indicates to my mind that the list or twist now existing in the Joliet is the result of the collision, and I so find.

In arriving at the amount to compensate the owner of the Joliet, the following facts are shown by the testimony:

The Joliet is some 14 years old, yacht built, of oak ribs, white cedar

planking, mahogany decks, glass cabin, with mahogany finish, used by her then owner for 2 or 3 winters, and then stowed in a shipyard upon a cradle under shelter for some 8 or 9 years; that some 2 or 3 years ago she was purchased by a party and put in the water, where she remained without any repairs or use, so far as the evidence indicates, until she was bought by the present owners for $250; that the present owner and her husband removed the varnish of the decks and cabin and revarnished the same; had the boat put on the ways, stern changed from sharp to square, keel spliced, etc., costing $600; also estimate of the value of the husband's services and cost of material used.

This collision occurred on October 4th last, the owner still occupies the boat as she did before the collision, and no sufficient examination has been made to determine with certainty what damage to timbers and frame, if any, resulted from the collision. The burden to show the damage rests upon the libelant. The only damage attempted to be shown is that the boat, as the result of the collision, is twisted and out of line, and as a result of such twist lists to port. The testimony of the boatbuilders is that it is impossible to take out this twist, except by rebuilding, and the cost of this would be disproportionate to her value. For the court to allow any of the amounts testified to for doing this would in my judgment be inequitable. It appears to me that the true rule would be to allow the amount of depreciation in the value of the boat caused by the collision. It must be borne in mind, in fixing the value of the boat before collision, that here was a boat some 14 years old, yacht built, which I take to mean light timbers, etc., not intended for hard usage, which had been for some years stowed in a yard, and been for some 2 years in the water without being moved by her own power, and which in March, a year ago, was sold to the present owner for $250, since which time she had had repairs and changes amounting to some $600 or $700 expended on her, and used then and now as a place of residence. True, it is claimed she will not steer since the collision, and the testimony of the man who towed her up the river is produced to show this; yet the owner testified that the rudder stock was bent when she was pulled out of the ways after the collision and caulked. Was the sheer, testified about by the boatman, when towing her, the result of the twist, or the bent rudder stock? There might well be a difference of opinion as to this.

I therefore feel that the testimony of the value of the boat before the collision is unreasonable as to the amount. It seems to me that a boat of the age of the Joliet, selling a little more than a year ago for $250, and upon which some $600 or $700 has since been expended, now valued at $1,500, would satisfy any reasonable judgment, and I therefore find such sum as her value before collision. It seems to me that the testimony of the witnesses that she is in her present state without value equally unreasonable, and entitled to no weight by this court. If I allow one-third of the value for depreciation, in addition to what claimant has already done, it would amply compensate libelant, for the damage done by the collision.

I therefore find that libelant is entitled to a decree for $500 against the claimant.

It will be so ordered.